IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division


K-Beech, Inc.,

                                    Plaintiff,

                versus            3:11CV469

John Does 1-85, et al.

                                    Defendants



        before:  HONORABLE JOHN A. GIBNEY, JR.
                United States District Judge



                October 24, 2011
                Richmond, Virginia



                Gilbert F. Halasz, RMR
                Official Court Reporter
                U. S. Courthouse
                701 East Broad Street
                Richmond, Virginia 23219

                (804) 916-2248

APPEARANCES


Leonard Paris, Esq.

David W. O'Bryan, Esq.

1          THE CLERK:  Case number 3:11 CV 469.

2          K-Beech, Inc. versus John Does 1 – 85.

3          With 3:11 CV 531, Patrick Collins, Inc. versus

4     John Does 1 – 58.

5          With case number 3:11 CV 535, Raw Films, Ltd.

6     versus John Doe 1.

7          Mr. Leonard Paris represents the plaintiff

8     counsel in each case, Mr. David W. O'Bryan.

9          Are counsel ready?

10         MR. PARIS:  Yes.

11         THE COURT:  Good morning, Mr. Paris.  It is an

12    honor to have you here.

13         MR. PARIS:  A pleasure to be here.

14         THE COURT:  Great to see you.  How have you

15    been?

16         MR. PARIS:  Doing fine.  Thank you.

17         THE COURT:  Have you got Mr. Blank back at work

18    yet?

19         MR. PARIS:  Mr. Blank was just given the award

20    of leader of the bar among 30 participants.

21         THE COURT:  Right.

22         MR. PARIS:  And I asked him if he would please

23    not do anything else, and to come back to work so we

24    can get back in business.

25         THE COURT:  Well, he is a lucky fellow, and he

1    is lucky to have you as a partner.

2        MR. PARIS:  I appreciate that.

3        THE COURT:  We are here today on this question

4    of reconsidering the severance order and determining

5    whether the conduct is sanctionable in this case.

6        Go ahead.

7        MR. PARIS:  If I could say preliminary, I have

8    known Mr. O'Bryan professionally for over 40 years.

9    He now shares space in my office, and has been with

10   me since several years ago.

11       He has been a pillar of the community, served as

12   delegate in the house of delegates in the State of

13   Virginia.  He has never had a complaint, bar

14   complaint, filed against him.  He has never been

15   sanctioned in any court for any reason whatsoever.

16       I would submit to The Court that this type of

17   action has been filed in the Eastern District of

18   Virginia in Alexandria before.  I think there are

19   four cases here, three with you and one with Judge

20   Payne.  These cases have been filed, as I understand

21   it, all over the country.  I don't know anything

22   about it.  I don't know the merits of the case.  But

23   I am here to tell you, if Your Honor please,

24   Mr. O'Bryan would never do anything to dishonor The

25   Court or to do anything that would cause him to be

1   sanctioned.

2       THE COURT:  I am very familiar with

3   Mr. O'Bryan's character.  I have no doubt that that

4   is true.  And I am not going to -- I have taken a

5   look at the materials that were filed by Mr. O'Bryan

6   and by --

7       MR. PARIS:  Amicus curiae?

8       THE COURT:  Yes.  The amicus.

9       MR. PARIS:  I don't know those folks.

10      THE COURT:  It seems while I disagree with their

11  view on who should be -- whether you can join all

12  these people as a defendant in one case, it looks

13  like there is an argument that can be made both ways,

14  and so there is nothing sanctionable there.

15      Let me just tell you what really got my concern

16  in this case, Mr. Paris.  The fact that they sue all

17  these people and then they, as soon as somebody shows

18  up to make any kind of defense, they get non-suited

19  or voluntarily dismissed.  And to me it just looks

20  like they are trying to cherry pick the defendants

21  that are easy to settle with, and then not having any

22  interest in actually having the case resolved, but in

23  settling cases.  Candidly, I don't really think that

24  is necessarily Mr. O'Bryan's doing, but more the

25  clients.  And I don't know whether there is, you

1    know, conflict between Mr. O'Bryan and his clients at

2    this stage.

3        One of the things that might weigh in on that is

4    how the clients have conducted this litigation

5    elsewhere.  I am sure there are these kinds of cases

6    pending all around the country.

7        Do you know anything about that, Mr. Paris?

8        MR. PARIS:  I don't know anything about it,

9    Judge.  I am here for Mr. O'Bryan.  He can probably

10   answer your questions.

11       THE COURT:  All right.

12       Well, let's hear from Mr. O'Bryan.

13       MR. PARIS:  Yes, sir.

14       THE COURT:  Mr. O'Bryan, it is a rare defendant

15   who gets to have a lawyer represent him and get to

16   represent himself as well.  But you are that lawyer

17   today.

18       MR. O'BRYAN:  I am honored.  Thank, Your Honor.

19       To answer The Court's question, that is part of

20   the strategy that was used across the country.  When

21   these motions are filed, they are filed by the same,

22   generally by the same, a lot of the same lawyers --

23   about half a dozen to a dozen lawyers all over the

24   country -- who file these same motions.

25       THE COURT:  File the lawsuits, or file the

1    motion?

2         MR. O'BRYAN:  File the motions.

3         THE COURT:  Motion to sever?

4         MR. O'BRYAN:  Yes, sir.

5         There are a number of anonymous motions that

6    come in.  These motions are all over the internet.

7    These people go on the internet, clip and paste

8    paste, and send them in.  I was noting in some of the

9    language in The Court's order we talked about the

10   $2,900.  That is a figure that is on the internet

11   that is passed around among these people.

12        THE COURT:  Does -- did your client make

13   settlement demands on any of these people?

14        MR. O'BRYAN:  The way that the case proceeds is

15   we filed the suit, Your Honor, and entered the order

16   allowing us to get the internet information from the

17   internet providers, Verizon and so forth.  It takes

18   about 30 to 60 days for them to do that.

19        Part of the process that they use is when they

20   do it is they notify their customers that a subpoena

21   has been requested.  That at that point we start

22   getting phone calls from these folks to settle these

23   cases.  We don't -- we have no idea who they are at

24   that point.  They are contacting us because they have

25   been contacted --

1          THE COURT:  By --

2          MR. O'BRYAN:  -- by Verizon or Comcast or

3      whoever.  And we settle some of them.

4          THE COURT:  Who makes, once you get in contact

5      with one of these people, who handles the settlement

6      discussions, you or the client?

7          MR. O'BRYAN:  The client.

8          THE COURT:  All right.

9          Handled by the client's legal department, or

10     you?  Do you tell them there is somebody to call

11     and --

12         MR. O'BRYAN:  They have employees who do it.  I

13     don't think they are lawyers.

14         THE COURT:  Do they have, does your client call

15     up these people once they get some idea who they are?

16         MR. O'BRYAN:  Normally what happens is a group

17     of them will, they will initiate the contact.  And

18     then probably roughly half of them, a certain portion

19     of that, are never found by the internet provider.

20     About 15 percent of them never are found.  And then

21     after that they will write a letter and contact them,

22     just like you would in any civil litigation.

23         THE COURT:  So let me see if I have this

24     straight.

25         What happens in these cases is that, except for

1    the people -- let's leave the people who call you

2    out.

3        You find out the identity of some people.  And I

4    take it your client then gets that from you, as is

5    their right.  And then the client calls up the newly

6    identified people and says, will you settle this

7    case?

8        MR. O'BRYAN:  That's correct.  Or write a

9    letter.

10       THE COURT:  Or write a letter.

11       And do you know what the demand is?

12       MR. O'BRYAN:  There is no demand initially.

13   Most of these cases settled in the $3,000 range.

14       THE COURT:  How do they get to that number?

15       MR. O'BRYAN:  That number was gotten to by

16   experience with the folks in charge of this, law firm

17   out of Florida.  They have experience with these

18   kinds of cases, and the settlement figures they are

19   receiving in this cases are at the extreme low end of

20   the settlement value of the cases, the broad range of

21   cases that they have.

22       THE COURT:  You say there is a firm in Florida

23   that is in charge of all this.  What do you mean by

24   that?

25       MR. O'BRYAN:  Well, they are counsel for the

1    industry.  For the industry.  And they affiliate with

2    the lawyers locally.

3         THE COURT:  They are not on your pleadings,

4    though.

5         MR. O'BRYAN:  No, sir.

6         As far as dismissing of the movants, when they

7    file a --

8         THE COURT:  Whose idea is that?

9         MR. O'BRYAN:  That is part of the strategy, Your

10   Honor, because they have learned from experience that

11   these people bring in issues that are unrelated and

12   so forth.  They are willing to file an individual

13   suit against them.  And what happens is, it is

14   cheaper in the long run to take a voluntary dismissal

15   and come back and file an individual case against the

16   individual who is filing the motion.  And we are

17   happy to file suit against them.  In fact --

18        THE COURT:  Have you done that?

19        MR. O'BRYAN:  In this case we are in the process

20   of doing it, but we are interrupted by The Court's

21   order.  Because we have started preparing to do that.

22        THE COURT:  I don't think my order precludes you

23   from filing individual law suits against anybody.

24        MR. O'BRYAN:  I mean, it threw things into an

25   uproar as to how we should proceed.

1    THE COURT:  Do you have -- let me tell you the

2    situation that I am sort of looking at in this,

3    Mr. O'Bryan.

4    Your client -- either from the client itself or

5    through this law firm in Florida -- what is the name

6    of the law firm?

7    MR. O'BRYAN:  Lipscomb Ellis.  They are

8    considered -- I have gone on the internet and looked

9    them up -- they have been voted the best copyright

10   lawyers in Florida.  I deal with Keith Lipscomb.

11   THE COURT:  So Lipscomb and Ellis, who are also

12   the client, issues directions in this case.  And

13   essentially gets somebody either at Lipscomb Ellis or

14   the client gets information from you and takes it

15   from there.  And I don't want to put you in a

16   position of having to disclose confidences in order

17   to represent yourself in this, but it seems to me

18   there is a tension between you and the clients

19   because what I see in these cases is that somebody

20   doesn't want to get these cases really heard.

21   Because I haven't seen any sign of any of these

22   individuals being sued.  Not here in Virginia, at

23   least.  Have they been sued somewhere else?

24   MR. O'BRYAN:  They are sued all over the

25   country.

1       THE COURT:  As individuals?

2       MR. O'BRYAN:  Yes, sir.

3       What happens is these people come in and say, we

4   want an individual sued.  What they really mean is we

5   want no suit.  What --

6       THE COURT:  I think the problem with that

7   argument, Mr. O'Bryan, is this.  Their motive is

8   irrelevant.  If they have a right to be sued

9   individually, they have a right to be sued

10  individually.  And if it is more costly to the movie

11  producers, so be it.  Why can't they sue Big Torrent

12  itself, or whoever it is?

13      MR. O'BRYAN:  Your Honor, these are

14  international.  They set up in Somalia and when you

15  try to go after somebody there they move to Chad or

16  somewhere else.  They are impossible -- they are

17  outside of the jurisdiction of any court.  So this is

18  the only alternative this industry has.  I mean, this

19  industry has a real problem, Your Honor.  They are

20  losing a hundred thousand of these a month, or half

21  of.  Happening all across the country.  It is a

22  massive problem.  What the company is trying to do is

23  enforce its copyrights.

24      THE COURT:  I don't understand.  You have said

25  in your papers that you -- that the company has

1   voluntarily dismissed the defendants and moved to

2   sever in order to cause future John Does not to move

3   to sever.  I don't see how that --

4        MR. O'BRYAN:  They learned.  After a while

5   that -- and in fact in this particular case -- they

6   have learned because there are gentlemmen's

7   agreements with certain lawyers across the United

8   States that they will not automatically file these

9   severance motions, which are just delaying tactics

10  and really frivolous.

11       THE COURT:  Again, it is not -- no, they are not

12  frivolous.  They are not frivolous.  They are

13  legitimate motions.  And, in fact, I granted one, or

14  granted a bunch of them.  So they are not frivolous.

15  I could be wrong about it.  Maybe the Fourth Circuit

16  will tell me that.  But they are not frivolous

17  motions.  They have a right to be sued individually.

18       MR. O'BRYAN:  And we are willing to sue them

19  individually.

20       THE COURT:  Your affidavit says, and I am

21  quoting here, "The labor and expense associated with

22  the Big Torrent peer-to-peer copyright litigation may

23  make it prohibitively expensive to sue IP addresses

24  prior to knowing that any particular IP address

25  resolved to a solvent individual who could be

1     served."  What does that sentence mean?

2          MR. O'BRYAN:  It means, Your Honor, that

3     basically this whole approach to these cases is a

4     winnowing process.  And we start out with a large

5     group and get down to a smaller and smaller group.

6     We dismiss cases for a number of reasons.  We have

7     run into law enforcement agencies doing this stuff,

8     and for legitimate reasons.  And we dismiss them.  We

9     don't sue anybody in the armed services.  We don't

10    sue well-known politicians.  We are not in the

11    business of doing that kind of thing.

12         THE COURT:  I assume you don't sue people who

13    are innocent, whose --

14         MR. O'BRYAN:  That's correct.  Once we get the

15    name, the process is to contact them.

16         THE COURT:  Who does that contacting?

17         MR. O'BRYAN:  The client.

18         And to start investigating, because as The Court

19    knows, we are not going to try to get blood out of a

20    turnip.

21         THE COURT:  I understand.

22         MR. O'BRYAN:  So, it is a winnowing process,

23    Your Honor.  The industry has found, and courts have

24    agreed, it is a legitimate way to proceed.  It's cost

25    effective from an administration of justice.  In

1    these cases instead of hundreds of cases being filed

2    there have been three cases filed.  And then for

3    whatever individual cases that have to be filed as a

4    result of motions being filed we are --

5        THE COURT:  Do you think it is proper to join

6    all of these defendants in one case?

7        MR. O'BRYAN:  It has been done in many, many

8    courts.

9        THE COURT:  Do you think it is proper?

10       MR. O'BRYAN:  Yes, sir.

11       THE COURT:  If you think it is proper, and I

12    assume then your client thinks it is proper.

13       MR. O'BRYAN:  Yes.

14       THE COURT:  And this law firm, Lipscomb law firm

15    in Florida, thinks it is proper.

16       MR. O'BRYAN:  Yes, sir.

17       THE COURT:  If that is the case, then why do you

18    voluntarily dismiss the people who have moved to

19    sever as opposed to litigating that issue with them

20    and resolving it?

21       MR. O'BRYAN:  Because they have found through

22    experience that they bring in extraneous issues.

23       THE COURT:  Like what?

24       MR. O'BRYAN:  I don't know.  I have been told

25    extraneous issues are brought in, and it was just not

1    feasible from a financial standpoint to go ahead and

2    spend a lot of time and money on those motions, to go

3    ahead and let the person get out of the joint group

4    and come back and file an individual.  They get their

5    individual --

6         THE COURT:  Okay.  Well, my view on this,

7    Mr. O'Bryan, is there is no sanctionable conduct as

8    to the joinder of these people because, although I

9    disagree with this view, and the folks at Steel

10   Handmeyer have made a, you know, a decent argument

11   that all these folks ought to be joined, the issue

12   that remains to me is whether these lawsuits are

13   brought for an improper purpose, namely not

14   necessarily litigating the issues, but rather when

15   anybody shows any sign of fighting the case to drop

16   them out so that you can -- so that somebody can

17   squeeze some money out of the remaining defendants.

18   I note that in -- let's just talk about one of these

19   cases.  There is a case called, that you brought,

20   called K-Beech versus John Doe 1 through 30.  I think

21   that is before Judge Payne.

22        And in that one -- it is number 3:11 CV 468 --

23   there have been no responsive pleadings by Does 1, 3,

24   24, 26 and 30 have been dropped from the case.

25        Do you know why those were dropped?

1      MR. O'BRYAN:  They were settled.

2      THE COURT:  Okay.  And then in the Patrick

3   Collins case.  Defendants 3, 5, 8, 52 have counsel in

4   them.  All of those were voluntarily dismissed.

5   Sorry.  52 was not voluntarily dismissed, but I think

6   that is because I entered an order telling you you

7   couldn't do that.

8      As soon as a lawyer showed up, they were

9   dismissed, except for Doe 40.  Was that another one

10  where there was a settlement?

11     MR. O'BRYAN:  I would think so, Your Honor.  Not

12  sure on that one.  Most of -- most of those dismissed

13  were settled.

14     THE COURT:  In Raw Films Doe 1 through 32;

15  number 3, 11 CV 532.  On September 27 you voluntarily

16  dismissed Doe 4.  I assume that is a settlement, is

17  that right?

18     MR. O'BRYAN:  I would think so, Your Honor.

19     THE COURT:  On the 29th Doe 3 filed a motion

20  to sever saying that he or she lived in

21  Charlottesville and this law suit wasn't proper here.

22  And that the plaintiff had refused to dismiss those

23  three from the case and so they moved to sever.  And

24  then four days later they were voluntarily dismissed.

25  That doesn't make sense to me.

1          MR. O'BRYAN:  I don't recall that from memory.

2          THE COURT:  Okay.  Well --

3          MR. O'BRYAN:  But in the cases that were

4    voluntarily dismissed, in these cases that we are

5    here on we had already started the preparation to

6    file the individual suits.

7          THE COURT:  What is so hard about filing these

8    individual suits?

9          MR. O'BRYAN:  We have to get affidavits.

10         THE COURT:  Why do you have to get affidavits to

11   file a law suit?  That is not in the Federal Rules

12   anywhere.

13         MR. O'BRYAN:  It is procedure that we follow.

14   We try to put it altogether before we do --

15         THE COURT:  Who have you sued individually?

16         MR. O'BRYAN:  We have one suit that is pending

17   now in this court with the another judge.

18         THE COURT:  Is that Judge Spencer's case, a

19   single John Doe?

20         MR. O'BRYAN:  Yes, sir.

21         That is one where they wanted -- there was a

22   lawyer involved, and they wanted a separate suit, and

23   then it ended up that they settled the suit with the

24   the lawyer for more than --

25         THE COURT:  The lawyer was the defendant?

1      MR. O'BRYAN:  No, the lawyer was representing a

2  defendant.

3      THE COURT:  Oh.

4      MR. O'BRYAN:  But the case was settled after the

5  individual suit was filed.

6      THE COURT:  But there wasn't a name of a party

7  in that case.  That was also a John Doe.

8      MR. O'BRYAN:  Right.  Yes, sir.

9      But the system that has been designed, to me it

10  looks like it is pretty effective in being the least

11  expensive way to proceed.  My clients have a huge

12  problem with these internet pirates.  They are out

13  there stealing, they are copying product.

14      THE COURT:  I understand there is a big problem,

15  but there is also a rule regarding severance that is,

16  you know, or joinder, rather, that may not be helping

17  you in these cases.  It seems to me like you say in

18  your papers that you, like your client, like to sue a

19  number of defendants in one case because it is too

20  expensive otherwise.  And that you want to settle

21  with the defendants through a mass suit because it is

22  otherwise too hard to get the cases done with all of

23  the expenses.  And that you voluntarily dismissed the

24  defendants who insist on being sued separately in

25  order to prevent people from using the right to be

1    sued individually or asserting their right to be sued

2    individually.

3         And that you voluntarily dismiss cases because

4    it is too expensive to fight the motion to sever.

5         MR. O'BRYAN:  Your Honor, the theory is when

6    they raise their hand and say, I want an individual

7    suit, we give them the individual suit.

8         THE COURT:  I understand what the theory is.  I

9    don't see the practice of it too much.

10        MR. O'BRYAN:  That is what we do.  We are just

11   beginning in this district.  These are the first

12   suits we filed.

13        THE COURT:  Well, I suppose in a sense when they

14   ask to be let out you are giving them what they want,

15   aren't you?

16        MR. O'BRYAN:  What they say they want, Your

17   Honor, but the reality is in the long run they don't

18   want it.  But they say they do to get out of the

19   case.  So we say if you raise your hand and you want

20   it, we will give it to you even though it is not as

21   efficient to do it that way.

22        THE COURT:  I think that your client in these

23   cases -- I believe what you are saying to me,

24   Mr. O'Bryan -- I believe that that is your

25   understanding of the process.  I am not so convinced

 1   that your clients are not trying to put the squeeze

 2   on people.  And I think that there is a conflict

 3   between you and the producers in this case at the

 4   sanctions level.  And I think that -- I have taken a

 5   look at the rules of ethics, and it seems to me that

 6   the rules are pretty clear that when a lawyer's

 7   personal interest -- I am not saying you are doing

 8   anything wrong -- but when a lawyer's personal

 9   interest puts him in a quandary with his clients'

10   interests, that they need -- the client needs

11   separate counsel.

12        And the other aspect of this is that right now

13   your client -- I don't know what, and I should not

14   know -- what confidential information your client has

15   given you that you are not giving.  It may be there

16   is none.  It may be there is a lot out there and you

17   can't tell me the answer to that because it is

18   confidential information.  I think your client needs

19   to have independent -- needs to make that decision

20   independently.  And I think that before we resolve

21   this thing your client needs to come back with the

22   independent counsel for themselves on the sanctions

23   issue.  And, again, the only sanctions issue left is

24   the manner of conducting the litigation, whether the

25   lawsuits are filed for an improper purpose, which

1   does not include actually litigating the cases to a

2   conclusion but rather just squeezing money out of

3   these people.

4       So why don't we set this for about a month out.

5   That will give your client some time to find somebody

6   to come represent them if they choose.  If they

7   choose not to, I can't force them to hire a lawyer.

8   So if they choose not to, they will have to deal with

9   the consequences of that themselves.

10      How do you all look on December 1st?

11      You okay then?

12      MR. O'BRYAN:  Yes, sir.

13      THE COURT:  Mr. Paris?

14      MR. PARIS:  December 1st is agreeable, Judge.

15  What time?

16      THE COURT:  All right.  Let's do it at

17  9:00 o'clock.

18      And, Mr. O'Bryan, I will enter an order saying

19  that you can't represent your client in these three

20  cases because of the conflict on this issue.  If the

21  case goes forward, obviously you can continue to

22  represent your client.

23      And I am not suggesting that you have done

24  anything improper in appearing today.

25      But what we will do is, I will ask you to be

1   sure that a copy of that is forwarded to your client.

2   And, Mr. Paris, your response to that as well.

3       MR. PARIS:  Yes, sir.

4       THE COURT:  How are you doing on compliance with

5   the order to notify?

6       MR. O'BRYAN:  We sent notice out last week, Your

7   Honor.

8       THE COURT:  We will be getting a copy.

9       MR. O'BRYAN:  We filed under seal with The Court

10  copies of all the letters we sent.

11      THE COURT:  I appreciate it.

12      I appreciate your candor in this case.

13      MR. O'BRYAN:  Thank you, Your Honor.

14      THE COURT:  We will work this out on

15  December 1st.  Okay.

16      MR. O'BRYAN:  Thank you, Your Honor?

17      THE COURT:  Thank you.

18      Mr. Paris, good to see you.

19      Now, do you share an office now with Mr. Paris,

20  O'Bryan?

21      MR. O'BRYAN:  I used to be his partner, but now

22  solo.  I rent space.

23      THE COURT:  Are you still doing -- you at one

24  time were doing sort of a state-wide practice.  Are

25  you still doing that?

1      MR. O'BRYAN:  No, sir.  I retired from that in

2  2000.

3      THE COURT:  Okay.

4      Well, it is good to see both of you, and thank

5  you both for coming today.

6                  HEARING ADJOURNED

7

8      THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT.

9              GILBERT FRANK HALASZ, RMR

10             OFFICIAL COURT REPORTER

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25