**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

K-BEECH, INC.,

        Plaintiff,

v.                                       **Civil Action No. 3:11cv00469-JAG**

JOHN DOE 1,

        Defendant.

**PLAINTIFF'S MEMORANDUM OF LAW
IN RESPONSE TO ORDER TO SHOW CAUSE**

Plaintiff, K-Beech, Inc., by counsel, respectfully submits the following Memorandum of Law in Response to the Order to Show Cause issued by the Court. (Docket No. 18).

**STATEMENT OF THE CASE**

On July 21, 2011, Plaintiff filed a complaint for copyright infringement against 85 John Doe Defendants. (Docket No. 1). On July 22, 2011, Plaintiff filed a motion for leave to serve third-party subpoenas prior to the Rule 26(f) conference. (Docket No. 2-3). On July 26, 2011, the Court granted Plaintiff's motion, authorizing it to serve Rule 45 subpoenas on certain internet service providers ("ISPs") in order to obtain the identity of the Defendants. (Docket No. 4).

On September 26, 2011, Doe Defendant #7, by counsel, filed a "Motion to Sever." (Docket Nos. 5-6). On September 27, 2011, Plaintiff filed a notice of voluntary dismissal without prejudice as to Doe Defendant #26. (Docket No. 7). On September 28, 2011, Plaintiff filed a notice of voluntary dismissal without prejudice as to Doe Defendant #7. (Docket No. 8).

On Wednesday, October 5, 2011, the Court issued a *sua sponte* opinion which (1) severed all Defendants except Doe 1 from the action; (2) quashed all the subpoenas served on the ISPs; and (3) ordered Plaintiff and its counsel to show cause why the conduct described in the opinion does not violate Rule 11(b). (Docket No. 9). Plaintiff filed, *inter alia,* a Motion for Reconsideration and Response to Show Cause on Monday, October 10, 2011. (Docket Nos. 10-11). On October 13, 2011, Plaintiff filed a Notice of Fling of Supplemental Authority Regarding Joinder Being Proper. (Docket No. 12).

Later that day, on October 13, 2011, the Court issued an Order and an Amended Memorandum Order to correct a typographical error. (Docket Nos. 13-14). On October 24, 2011, the Court held a hearing on the issues related to whether Plaintiff and/or its counsel should be subject to sanctions for violating Rule 11.[1] On October 24, 2011, the Court issued an Order holding that Plaintiff's joinder of multiple, anonymous Defendants in this case would not result in sanctions. However, the Court stated that the "issue of whether the above-captioned suit was filed for an improper purpose may be sanctionable". (Docket No. 18). The Court further ordered Plaintiff to find new counsel on this specific issue.

On October 24, 2011, the Court docketed a "Declaration to Refute Plaintiff's Declaration in Support of Motion for Reconsideration and Response to Show Cause Order" filed by "an anonymous John Doe" also known as "*DieTrollDie*". (Docket No. 19). This "Declaration" was not verified or attested to in any matter and was filed by an admitted non-party to this case who lacks standing to file pleadings in this matter.

---

[1] The Court stated that one purpose of the Hearing was "reconsidering the severance order," although there was no argument on that issue. (Show Cause Hr'g Tr. at 4:4 (Oct. 24, 2011)).

On October 28, 2011, the Court denied Plaintiff's Motion for Reconsideration. (Docket No. 20). The Court scheduled a hearing for December 20, 2011 to address whether this suit was filed for an improper purpose under Rule 11. (Docket No. 29).

## INTRODUCTION

This case is one of several pending in this District and across the country for copyright infringement against Doe Defendants who have illegally downloaded movie(s) on the internet. The cases have been brought by members of the adult movie industry to enforce their valid copyrights, to stop the widespread and unlawful infringement, and to hold the infringers liable for their acts.[2]

The only difference between this case and the countless others filed every day by other plaintiffs in a broad array of civil litigation is that this Plaintiff did not have the ability to identify the defendants before suit is filed. Like any plaintiff in any case, Plaintiff would like to settle with as many defendants as possible, though not all. Plaintiff recognized that some cases will be litigated and it entered this process fully expecting—and desiring—to litigate some cases to completion, as will be explained in greater detail in Part II of the Analysis section, *infra*.

In this particular set of cases, the Court *sua sponte* issued an opinion after Plaintiff voluntarily dismissed one Doe Defendant who had filed a motion to sever alleging improper joinder. Without allowing the Plaintiff to brief the issue, the Court granted the motions to sever, severed 84 Doe Defendants from the case and ordered Plaintiff and its counsel to show cause

---

[2] This is just the latest industry to defend against internet piracy. It was preceded by numerous suits by other companies in the music and mainstream movie industry. Some of those continue today with a decision as recently as September 16, 2011 by the First Circuit Court of Appeals in *Sony BMG Music Entertainment v. Tenenbaum*, 2011 U.S. App. LEXIS 19086.

3

why the conduct described in the opinion does not violate Rule 11(b). In particular, the Court noted:

> According to some of the defendants, the plaintiffs then contacted the John Does, alerting them to this lawsuit and their potential liability. Some defendants have indicated that the plaintiff has contacted them directly with harassing telephone calls, demanding $2,900 in compensation to end the litigation.

(Docket No. 9 at p. 4). Not a single Doe Defendant indicated that such conduct occurred *in this case*.

> The Court continued:
>
> When any of the defendants have filed a motion to dismiss or sever themselves from the litigation, however, the plaintiffs have immediately voluntarily dismissed them as parties to prevent the defendants from bringing their motions before the Court for resolution.

*Id*. Doe Defendant #7, by counsel, filed a motion to sever him/herself and Plaintiff gave the movant exactly the relief it sought, thereby avoiding needless delay and decreasing the cost of this litigation. The Court further stated:

> This course of conduct indicates that the plaintiffs have used the offices of the Court as an inexpensive means to gain the Doe defendants' personal information and coerce payment from them. The plaintiffs seemingly have no interest in actually litigating the cases, but rather simply have used the Court and its subpoena power to obtain sufficient information to shake down the John Does.

(Docket No. 9 at p. 4). There is absolutely no evidence of any "coercion" or of any type of "shake down" in the record before the Court. It is standard practice in civil litigation to contact a potential defendant to see if a resolution can be reached without judicial intervention. Indeed, that is often one of the first inquiries made by a Court. The only difference here is that Plaintiff does not know who the defendants are until after litigation has already been filed. While the Court describes the subpoena process as "an inexpensive means to gain the Doe defendants' personal information," it is, in fact, the only means. (Docket No. 9 at p. 4).

4

The Court then stated:

> Whenever the suggestion of a ruling on the merits of the claims appears on the horizon, the plaintiffs drop the John Does threatening to litigate the matter in order to avoid the actual cost of litigation and an actual decision on the merits.
>
> The plaintiff's conduct in these cases indicates an improper purpose for the suits.

*Id*. at pp. 4-5. Nothing pertaining to the "merits of the claims" has been filed in this case. The only motion filed was one to sever a single defendant based on improper joinder. The movant argued that he/she should be sued individually and Plaintiff dismissed that movant to do just that—sue him/her individually. Yes, Plaintiff could have litigated the motion to sever—a motion another similarly situated plaintiff has litigated successfully all over the country, including in the Alexandria Division of this District. *Patrick Collins, Inc. v. Does 1-35*, Civ. Action No. 1:11cv406, Docket No. 15 (E.D. Va. July 8, 2011) (attached hereto as Exhibit A). However, for strategic reasons, Plaintiff determined it would be more cost-effective and efficient to sue the movant individually.

There is no improper purpose in this case and sanctions against Plaintiff and/or its counsel are not warranted.

**STANDARD**

Under Rule 11(c)(3) of the Federal Rules of Civil Procedure, "the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)." However, because a "*sua sponte* show cause order deprives a lawyer against whom it is directed of the mandatory twenty-one day 'safe harbor' provision provided by the 1993 amendments to Rule 11. . . . a court is obliged to use extra care in imposing sanctions on offending lawyers." *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 151 (4th Cir. 2002) (citing *United Nat'l Ins. Co. v. R&D Latex Corp*., 242 F.3d 1102, 1115-16 (9th Cir. 2001) (noting

that *sua sponte* Rule 11 sanctions for allegedly baseless legal claims are to be examined closely as there is no 'safe harbor' available).

According to *Hunter*, "[t]he Advisory Committee contemplated that a sua sponte show cause order would only be used 'in situations that are akin to a contempt of court,' and thus it was unnecessary for Rule 11's 'safe harbor' to apply to sua sponte sanctions." *Id*. Therefore, the Fourth Circuit will review *sua sponte*-imposed Rule 11 sanctions with a heightened standard. *Id*. at 153 (citing *United Nat'l Ins. Co.*, 242 F.3d at 1115 (holding that the district court's assertions in support of Rule 11 sanctions that were imposed *sua sponte* would be reviewed with "particular stringency")).

Specifically, Rule 11(b)(1) requires a party to certify that "a pleading, written motion, or other paper . . . is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." A district court deciding whether to impose Rule 11 sanctions for improper purpose must evaluate the attorney's conduct "according to an objective standard of reasonableness." *In re Hardee*, 1998 U.S. App. LEXIS 26859 *14 (4th Cir. 1998) (*In re Weiss*, 111 F.3d 1159, 1170, 1171 (4th Cir. 1997)); *In re Kunstler*, 914 F.2d 505, 514 (4th Cir. 1990). As explained in *Kunstler*,

> it is not enough that the injured party subjectively believes that a lawsuit was brought to harass, or to focus negative publicity on the injured party; instead, such improper purposes must be derived from the motive of the signer in pursuing the suit. An opponent in a lawsuit, particularly a defendant, will nearly always subjectively feel that the lawsuit was brought for less than proper purposes; plaintiffs and defendants are not often on congenial terms at the time a suit is brought. However, a court must ignore evidence of the injured party's subjective beliefs and look for more objective evidence of the signer's purpose.

914 F.2d at 518–19. The admonition to seek objective evidence applies here even though there is no adverse party prompting a Rule 11 analysis. Even "a subjective hope by a plaintiff that a lawsuit will embarrass or upset a defendant, so long as there is evidence that a plaintiff's central

6

purpose in filing a complaint was to vindicate rights through the judicial process," will not serve as a basis for Rule 11 sanctions. *Id*. at 520. Finally, where there is an improper purpose combined with a proper purpose, sanctions should not be imposed. *U.S. v. (Under Seal), in re antitrust grand jury investigation*, 714 F.2d 347, 349 (4th Cir. 1983).

Applying these standards, there is no evidence in this case of an improper purpose warranting Rule 11 sanctions and certainly no conduct in this case that is "akin to a contempt of court." *Hunter*, 281 F.3d at 151. The only evidence is that Plaintiff's purpose was to enforce its copyrights, whether by settlement or trial, due to the devastating impact of internet piracy on Plaintiff's business. Plaintiff respectfully requests that the Court find there was no improper purpose here and not impose Rule 11 sanctions on either it or its attorney in this matter.

## ANALYSIS

I. **There is no record evidence that the Plaintiff or its attorney acted with an improper purpose.**

The precise manner in which federal courts examine Rule 11(b)(1) questions shows that a sanction for improper purpose in this case is not possible on the record before the court. Courts determine if a party or attorney had an improper purpose in part by looking at the legal sufficiency of the pleading. Even where a pleading has a questionable legal basis, but is not frivolous on the facts and law, it is not likely to be made with an improper purpose. *See In re Hardee*, 1998 U.S. App. LEXIS at *15–16 (finding no improper purpose where facts and law supported a good faith argument for taking the action that the party took in its filings).

The pleadings filed in this case, most notably the Complaint, are well-pled and have a sound legal basis. Plaintiff has valid copyrights which it is entitled to protect. Defendants have allegedly infringed upon those valid copyrights. Plaintiff sued to enforce its rights and recover damages. It is too early in this process to make assumptions about Plaintiff's intent when it filed

a meritorious claim. *See, e.g., Rothman v. City of Chicago*, 2003 US Dist Lexis 8376 *20 (N.D. Ill. May 16, 2003) ("At this stage of the litigation, it cannot be determined that Rothman filed the instant complaint for an improper purpose or that it is not warranted by existing law. Accordingly, sanctions are denied.").

Based upon the Court's Order, counsel for the Plaintiff understands the Court to have limited its show cause to improper purpose, and not to have raised any question as to the legal or factual sufficiency of any particular pleading in the three cases. Given the few pleadings in the cases and the extremely limited record evidence, there is no legal basis for a finding of improper purpose at this time.

      **a.    The sequence of filings cannot, by itself, constitute proof of improper purpose.**

The mere possibility of an improper purpose by itself, inferred from a series or the timing of filings, does not support sanctions. *Harrison v. Edison Bros. Apparel Stores, Inc.*, 151 F.3d 176 (4th Cir. 1998). Even where the timing of a motion raises a plausible ***argument*** of an improper purpose, it cannot, standing alone, support a ***finding*** of improper purpose. *See id*. at 180. Instead, the sanctioning Court must make a finding—based on positive evidence—of improper intentions for a particular filing viewed according to an objective standard of reasonableness. *Id*.

In *Harrison*, the district court found that an attorney who filed a motion for disqualification of opposing counsel two weeks before a trial date after five years of litigating the matter did so with an improper purpose. *Id*. at 180. The Fourth Circuit reversed because, other than the timing of the filing, the record did not contain positive evidence of an improper purpose. *Id*. Here, there is likewise no positive evidence of any improper purpose on the part of the Plaintiff. Instead, the only record evidence will be, as presented at the hearing, that at all times

8

the Plaintiff actively pursued a litigation strategy aimed at enforcing its legally protected rights. "In other words, it is not enough that the injured party subjectively believes that the signatory filed a document to harass him. Instead, the court must derive the signer's purposes from objective evidence of the signer's motive in filing the document." *In re Weiss*, 111 F.3d 1159 (4th Cir. 1997).

Thus, when there is a lack of positive evidence in the record of improper purpose—i.e. the district court imposes sanctions based on inferences about purpose from the filing of pleadings alone, but not credible, admissible evidence proving an improper purpose—it is an abuse of discretion to impose Rule 11(b)(1) sanctions. *Gust K. Newberg Constr. Co. v. Fairfax*, 1991 U.S. App. LEXIS 18714 (4th Cir. 1991) ("We find that the district court abused its discretion in levying sanctions against Newberg and its counsel without any finding that Newberg's allegations of improper *ex parte* communications were made in bad faith."). In this case there is no objective evidence of any improper purpose with regard to any particular John Doe defendant identified in this proceeding. As of October 5, the Court only had the filing of the voluntary dismissals in the particular circumstances upon which to base its opinion. The Court had nothing more and specifically no evidence as to what the purpose was in filing the dismissal. Standing alone, this cannot justify a finding of improper purpose.

      **b.    The withdrawal of a pleading does not indicate an improper purpose in previously filing the pleading.**

Also, the withdrawal of any particular pleading—or in this case, dismissal of an action—"has no bearing on the objective reasonableness of the contention [the plaintiffs] withdrew." *Izadpanah v. Charlton*, 1998 U.S. App. LEXIS 2057 *3 n. 2, *5 n. 3 (4th Cir. 1998) ("Although Appellants withdrew their attempt to [make a particular argument] in the first appeal to this court, it is not reasonable to infer from the withdrawal alone that Appellants had an improper

9

purpose in pursuing the claim."). Thus, the mere fact that the Plaintiff choose not to immediately re-file against or pursue a particular John Doe defendant does not serve as proof that the filing against that defendant in the first place was motivated by an improper purpose.

### c. Allegations concerning other cases are irrelevant.

It is improper to consider what the Plaintiff did or did not do in this district or in other jurisdictions in determining whether or not conduct in this case was motivated by an objectively improper purpose. *Hunter*, 281 F.3d at 157 n. 19 (citing *Woodard v. STP Corp.*, 170 F.3d 1043, 1045 (11th Cir. 1999) ("Rule 11 sanctions are properly applied only to cases before the court, not to cases in other courts."). Here, the Court specifically stated that "One of the things that might weigh in on that [whether this case was brought for an improper purpose] is how the clients have conducted this litigation elsewhere." (Show Cause Hr'g Tr. p. 6 (Oct. 24, 2011)). Out of an abundance of caution and to respond to the Court's direct inquiry regarding same, Plaintiff will provide evidence regarding the status of some of its other pending cases. *See* Analysis Part II, *infra*. However, under *Hunter*, such information cannot serve as the basis for Rule 11 sanctions in this case. Should the Court decide to consider evidence regarding other cases, such information clearly shows Plaintiff's intent to re-file in this case—just as it did in other cases across the country.

Moreover, the allegations of harassment—which (i) are based upon multiple levels of hearsay; (ii) concern the actions of different law firms representing unknown clients; and (iii) are posited by an anonymous author who may not be a party to these cases[3]—are irrelevant to whether the Plaintiffs in the cases ***before this Court*** violated Rule 11.

---

[3] Plaintiff objects to the Court relying on and/or considering these pleadings for the reasons stated herein. They are Docket Nos. 5, 6, 19.

10

Commenting on a similar situation, the court in *In re Kunstler*, stated that "a statement reported in the press should never be the basis for sanctions; rather, to be a basis for sanctions, the statement should appear either in an affidavit, in other reliable testimony, or in a statement by counsel in court." 914 F.2d 505, 512 (4th Cir. 1990). Likewise, an anonymous filing (Docket No. 18) by an admitted non-party to this case ("*DieTrollDie*") cannot form the basis of sanctions.[4]

Furthermore, the subjective belief of Doe defendants that they are being harassed is the exact kind of evidence that "a court must ignore" because it is merely "the injured party's subjective beliefs" in favor of "objective evidence of the signer's purpose." *Kunstler*, 914 F.2d at 519. Defendants are routinely contacted in civil cases to discuss settlement and Plaintiff did nothing wrong by contacting some of the defendants to discuss a potential resolution of their cases. No defendant in this case—or in any other—is under any obligation to settle their case, particularly if they believe they are innocent of the allegations. As explained by the Second Circuit:

> Nor do we think it was appropriate for the district court to find that Lewin's prelitigation letters were evidence that the New York complaint was filed for an improper purpose. It is hardly unusual for a would-be plaintiff to seek to resolve disputes without resorting to legal action; prelitigation letters airing grievances and threatening litigation if they are not resolved are commonplace, sometimes with salutary results, and do not suffice to show an improper purpose if nonfrivolous litigation is eventually commenced. Indeed, it would be ironic to hold that *Rule 11* sanctions may be awarded based solely on evidence that the plaintiff has given the defendant a warning that the complaint will be filed unless an allegedly tortious lawsuit is withdrawn, in light of the fact that the current version of *Rule 11* itself, *see Fed. R. Civ. P. 11(c)(1)* (effective Dec. 1, 1993), essentially forbids the filing of a motion for sanctions unless the movant has given

---

[4] Additionally, it is hard to imagine more unreliable evidence. Not only is it flagrant hearsay but neither the identity of the proponent of the hearsay, nor the speaker of it is identified. Nothing whatsoever is disclosed about the source or the accused parties. It is totally unworthy of belief, in addition to being irrelevant.

his opponent a warning that such a motion will be filed if the allegedly sanctionable paper is not withdrawn.

*Sussman v. Bank of Israel*, 56 F.3d 450, 459 (2nd Cir. 1995). Furthermore, it "is not the role of *Rule 11* to safeguard a defendant from public criticism that may result from the assertion of nonfrivolous claims." *Id.* The fact that in order to learn the identity of the defendants Plaintiff first had to file this action and serve a subpoena does not change this analysis.

      **d.**      **Attorney and client conduct during the course of litigation cannot serve as the basis for a Rule 11 sanction.**

Moreover, even if the Court did not agree with the strategy of copyright enforcement that the Plaintiff is pursuing, "Rule 11 'does not purport to be a means for district courts to sanction conduct in the course of a lawsuit . . . that does not involve the signing of pleadings, motions, or other papers.'" *Brubaker v. Richmond Fin. Holding Co., Inc.*, 943 F.2d 1363, 1382 (4th Cir. 1991) (citing *Simpson v. Welch*, 900 F.2d 33, 36 (4th Cir. 1990)); *see also Carolin Corp. v. Miller*, 886 F.2d 965 (4th Cir. 1988). Stated differently, the strategy to effectively pursue existing rights is not open to sanction under Rule 11. Only particular pleadings filed for a particular, evidence-based improper purpose are eligible for a Rule 11 sanction.

      **e.**      **The granting of the Does' wish to be dismissed by itself cannot serve as the basis for a sanction.**

Finally, when a party consents to a motion, it cannot be made for an improper purpose. *Bakker v. Grutman*, 942 F.2d 236, 240–41 (4th Cir. 1991) ("Nothing in the record suggests that [party A's] filing of the motion to extend was motivated by a desire to harass, vex, or annoy [party B], or that the motion indicated a desire simply to launch headlong into continued prosecution of the claim. Indeed, there was the fact of not inconsiderable weight that [party B] consented to the motion."); *In re Kunstler*, 914 F.2d 505, 512 (4th Cir. 1990) (holding that sanctions are inappropriate where the parties file a stipulated dismissal motion under Rule

12

41(a)(1)(ii)). In this case, the dismissal of the Does who are moving to actually be dismissed from the suit is giving them exactly what they purport to want—the Court itself noticed this at the October 24, 2011 hearing. (Show Cause Hr'g. Tr. at 20:13–15 (Oct. 24, 2011)). Therefore, such a pleading is materially the same as filing a pleading that the other party consents to and cannot serve as the basis for Rule 11 improper purpose sanctions.

Based on the foregoing case law, the lack of any evidence in the record indicating an improper purpose, and the fact that each pleading in the pending case was filed with both a factually and legally non-frivolous basis, there is no predicate for a finding of improper purpose by the Plaintiff or its attorney for any particular pleading.

## II. If necessary, the Plaintiff will introduce evidence at the hearing that proves its intent to properly enforce its federally protected rights.

The Court should rule in favor of the Plaintiff based on the law as stated in the argument above without needing to consider any subjective evidence of Plaintiff's intent in this case or actions in other cases. However, because the Court directly inquired about such evidence, Plaintiff will provide this information. (Rule 11 Hr'g. Tr. at 6:3–6, 11:23, 18:15, 20:8–9 (Oct. 24, 2011)). Plaintiff reiterates, however, that under Fourth Circuit jurisprudence, such information cannot serve as the basis for Rule 11 sanctions in this case. By offering this evidence in response to the Court's inquiry, Plaintiff does not waive its objection to any consideration by the Court should it impose sanctions.

The reason that subjective evidence of intent is unnecessary is because the standard is whether the purpose is objectively reasonable, not subjectively proper. *In re Hardee*, 1998 U.S. App. LEXIS 26859 *14 (4th Cir. 1998); (*In re Weiss*, 111 F.3d 1159, 1170, 1171 (4th Cir. 1997); *In re Kunstler*, 914 F.2d 505, 514 (4th Cir. 1990). The Court perhaps already fully understands this standard as it articulated the same reasoning at the Oct. 24, 2011 hearing when it stated,

13

speaking of the Does' motivation for bringing a motion to quash, that "[t]heir motive is irrelevant. If they have a right to be sued individually, they have a right to be sued individually." (Rule 11 Hr'g. Tr. at 12:8–10). Likewise, the Plaintiff, regardless of personal motivations for bringing and settling these suits, has a legal right to bring them, and equally has a right to settle them.

Over the past five years, internet piracy in the adult movie industry has exploded. The theft has become so prevalent that it began to seriously harm the industry as a whole including this Plaintiff. (Dec. of Beechum) (attached hereto as Exhibit B). As a result, Plaintiff communicated with counsel and other professionals to determine how to stop the infringement, protect their copyrights, and recoup some of their losses. Plaintiff also wanted to enforce its rights in a cost efficient manner. From the beginning, the central purpose of this litigation has been to regain control of copyright-protected work product by stopping the widespread, unlawful downloading activity. (Dec. of Beechum, ¶ 7).

As the Court noted, one way to go about this was to go after the bit torrent providers. In fact, the Plaintiff would have preferred this method because that would have dramatically reduced the cost and time of this campaign to enforce its copyright protections and destroy it at its source. (Dec. of Beechum, ¶ 8). However, this proved impossible. The problem was and remains that the providers are, not coincidentally, located in places beyond U.S. jurisdiction.[5]

---

[5] The largest provider of bit torrent software, The Pirate Bay, is located in Sweden and regularly posts both legal notices/letters from companies attempting to enforce copyrights against it and its responses to same. The responses are generally sarcastic and flippant, ultimately saying that Swedish law lets it do this, and it does not care at all what U.S., U.K., or other nation's laws are being broken. http://thepiratebay.org/legal (last visited on Nov. 28, 2011). As of November 28, 2011 at 3:49pm, The Pirate Bay was advertising that it facilitated 5,386,427 registered users, 33,600,902 peers (24,526,290 seeders + 9,074,612 leechers) concerning 3,971,401 torrent files. These files range from content created by the Plaintiff, to Apple, Microsoft, Dreamworks, and just about every other major producer of copyrighted material one can imagine.

14

Thus, Plaintiff, on advice of counsel, determined that the lawsuits had to focus on the infringers themselves. Although Plaintiff realized that suing the end users would be costly and time-consuming, it felt that the potential result of stopping this crippling activity and hopefully recouping some losses would be worth it. Given the magnitude of its losses, Plaintiff felt it had no other practical choice. Plaintiff relied on its counsel to conduct the litigation in an efficient and ethical manner. It did not make individual litigation decisions regarding the dismissal or pursuit of specific defendants.

Plaintiff learned that it did not have the ability to identify the infringers before suit is filed and, therefore, could not contact them prior to filing suit to try to resolve the matter without judicial intervention. Instead, Plaintiff's counsel has to engage experts and investigators to identify the internet protocol addresses ("IP address") of the infringers. It then has to file suit against the John Does identified only by an IP address and seek leave to immediately file subpoenas on the internet service providers ("ISPs") to whom the IP addresses belong so that the ISPs can identify the infringers by name. Timeliness of the subpoenas is critical because ISPs do not keep this information for extended periods of time. In fact, some smaller providers do not keep it at all.

If the subpoena is allowed, the ISPs identify the defendants giving the Plaintiff's counsel the first opportunity to learn who the infringers are. Only then can Plaintiff's counsel or other representative contact any specific defendant to see if the suit can be resolved without further judicial intervention—just as counsel would have done prior to filing suit had such information been available. Plaintiff relies on counsel to then investigate each infringer. That investigation is intended to learn things like whether defendants (1) are still alive; (2) have viable defenses; (3)

---

http://thepiratebay.org/top (Listing top content by category, with the major categories including

15

are destitute; and/or (4) have miscellaneous circumstances that would tend to make a suit worth pursuing.  (Dec. of O'Bryan, ¶ 10) (attached hereto as Exhibit C).

Plaintiff would like to settle with a large number of defendants.  However, it always intended, and still does intend, to litigate some cases.  (Dec. of O'Bryan, ¶ 8). Given the number of infringers across the country, Plaintiff simply does not need to litigate every case to vindicate its rights, though it expected from the very beginning to litigate some number of cases.  *Id*. at ¶ 6. A successful lawsuit against even a few infringers will set the precedent for others and hopefully significantly reduce the unlawful activity—just as it did in the music industry.[6]  That does not mean that Plaintiff does not want cases to settle if possible on favorable terms.  However, Plaintiff does not condone its counsel "harassing" or oppressing anyone and has no reason to believe that was done.

The Plaintiff learned from its counsel that after it began filing these lawsuits, defendants filed motions to quash.  Usually, the basis for the motions was improper joinder.  Plaintiff's attorneys began responding to the motions, and in the vast majority of cases--including the previously cited case in the Alexandria Division--courts found that joinder was proper--at least at this initial stage of the litigation.

Then certain bloggers started posting a template of the motion to quash online in an apparent effort to complicate and delay the practice of suing the infringers for copyright violations.  According to Attorney Graham Syfert, one of the primary authors of these motions, "[m]y dream would be to have 10,000-20,000 people file all three documents [Motion to Quash,

---

"audio", "video", "games", "applications", and "other").
[6] For instance, in the opinion cited previously involving the music industry, the First Circuit Court of Appeals noted that while the suits against individual infringers began in 2002, the Court was "aware of only one other action against an individual that has proceeded to trial." *Sony BMG*

16

Motion to Dismiss with Affidavit in Support and a Motion for Protective Support] to the lawyers and severely cripple the entire process."[7]

As the bloggers intended, the filing of the canned motions multiplied. (Dec. of O'Bryan, ¶ 11). Plaintiff's counsel determined that dealing with each canned motion would be too costly and time-consuming[8] and that it would be more efficient to dismiss the movant, followed by the filing of an individual suit—which is precisely what the movant represented it sought to achieve. *Id*. at ¶ 12. Plaintiff's counsel believed that once the word spread that motions to quash based on joinder would be dealt with in separate law suits, the filing of these motions would cease. This has been validated by actual experience in some jurisdictions. *Id*. Instead of avoiding the merits of the suits, Plaintiff's counsel was actively avoiding increased litigation costs and needless delay by pursuing individual suits when infringers sought them.

The other issue that became apparent in the early months of these cases was the serious time constraint created by Rule 4(m)'s 120 day service deadline.[9] It is very difficult to identify the John Does, investigate and communicate with them and serve them, if necessary, within that timeframe. Thus, in some instances, counsel for the Plaintiff decided for strategic reasons to file a notice of voluntary dismissal after learning the identities of the Does. Then counsel would investigate the Doe to determine if a suit is appropriate/in the best interests of the Plaintiff, and

---

*Music Entertainment v. Tenenbaum*, 2011 U.S.App. LEXIS 19086 *11 fn 4 (1st Cir. September 16, 2011).

[7] *See* http://lawvibe.com/uscg-sues-bittorrent-users-graham-syfert-of-affinity-law-firm-defends/. Initially, Mr. Syfert charged $99.00 for these documents, but soon lowered the price to $9.99. Eventually, these documents were "pirated" and shared for free on torrent and other file-sharing sites.

[8] For example, while it ultimately prevailed, the plaintiff in the case in the Alexandria Division (Exhibit A) briefed and argued the issue on two separate occasions and three months elapsed between the initial motion and the Court's decision.

[9] The cases involving the strategy discussed here only started being filed in April of this year.

then potentially bring an individual suit. In some jurisdictions, Plaintiff's counsel filed a notice of intent to sue each John Doe individually. *See, e.g.*, PA Notice attached as Exhibit D.

Plaintiff clearly intended to litigate these cases, as demonstrated by the affidavit of Mr. O'Bryan, the exhibits thereto and the compelling logic of the strategic plan. Instead of filing new, tailored briefs for each motion to quash, then potentially having hearings on each, counsel decided to voluntarily dismiss the Does that chose this tactic[10] and re-file against them individually. This tactic was the best strategy available to thwart an organized national effort to protect internet theft by clogging the courts and over-whelming the Plaintiff with paperwork.

In its order and in the transcript of the October 24 Hearing, the Court seemed to express skepticism that the clients intended to re-file the dismissed actions and more importantly, had any intent to protect their rights through actually trying some cases. While there is no evidence to support this conclusion, ample evidence exists to demonstrate that the intent to re-file and to litigate some of these cases has always been part of the plan. Indeed, at the inception of embarking on this strategy, Plaintiff contemplated taking cases through trial to a judgment, if their counsel deemed appropriate. (Dec. of Beechum, ¶ 7). Further, Mr. O'Bryan's engagement letter has a fee structure that increases according to a schedule with the highest potential pay-out for him corresponding to a judgment obtained after a trial. (Dec. of O'Bryan ¶ 7).

Therefore, as Mr. O'Bryan affirms and documents support, the re-filing of individual suits would have happened here had this Court's rulings not had a chilling effect on Mr. O'Bryan and other counsel with whom he works. Having cases in numerous other jurisdictions and other

---

[10] There was discussion at the October 24 Hearing about these motions being "frivolous," which the Court interpreted to address their merits. That was not what was meant. Clearly, a defendant in these cases has a right to file that motion. What is meant by "frivolous" is that the purpose is usually to slow down the process, make it more difficult and even hopefully to be dismissed and

cases in courts in the Eastern District of Virginia, this Court's orders created such uncertainty as to how this Court might rule in the individual cases—for example, if, after re-filing, a settlement was achieved and the case dismissed. Thus, counsel decided it was best to wait before filing individual suits in Virginia until after the suggestion that an improper purpose might exist here was hopefully put to rest.

Furthermore and as evidence of what would have happened here, in dozens of instances across several jurisdictions the Plaintiff is actively filing suit against individual defendants. (*See* Exhibit E, Individual Suits Chart). While Plaintiff believes it has a legal right to bring suits against multiple Does under the joinder rules, Plaintiff will bring individual suits if necessary. Those suits, like the joined suits, will involve the same process of filing, getting a subpoena, seeing if the ISP retained any information about that Doe, learning about the Doe, and then deciding if the Doe is worth pursuing. Naturally, some of the Does will not be worth pursuing perhaps because the case against them is weak, or the Doe does not appear to have any means with which to pay a judgment. Additionally, as with Doe #1 remaining in this case, no one was identified. This is not by any means an isolated occurrence and using individual suits means that when this occurs a filing fee is wasted, a court file is needlessly created, a separate subpoena is issued, and the Court's time and resources are unnecessarily consumed.

Neither Plaintiff nor its counsel had an improper purpose for filing this suit. However, even if the Court were to find that there was an improper purpose, it was undoubtedly and absolutely combined with a proper purpose. As such, sanctions should not be imposed. *U.S. v. (Under Seal), in re antitrust grand jury investigation*, 714 F.2d 347, 349 (4th Cir. 1983). The reasoning behind this rule is undeniable—it should not be a condition-precedent to filing suit to

---

left alone. The defendants filing these motions really do not want to be sued individually even

protect one's rights that a plaintiff has zero animosity toward the defendant. Thus, even if the Court believes that the Plaintiff was partially motivated by an improper purpose (which it was not), that would not be sufficient to sanction it under Rule 11(b)(1).

WHEREFORE, Plaintiff K-Beech, Inc. respectfully request that the Court not impose Rule 11 sanctions on either the parties or their attorney in this matter.

K-BEECH, INC.
By Counsel

/s/  Wyatt B. Durrette, Jr.
Wyatt B. Durrette, Jr., Esq. (VSB No. 04719)
Christine Williams, Esq. (VSB No. 47074)
J. Buckley Warden, Esq. (VSB No. 79183)
DurretteCrump, PLC
Bank of America Center
1111 East Main Street, 16th Floor
Richmond, Virginia 23218-0561
Telephone (804) 775-6900
Facsimile (804) 775-6911

**CERTIFICATE OF SERVICE**

I hereby certify that on November 9, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

/s/  Wyatt B. Durrette, Jr.
Wyatt B. Durrette, Jr.

---

though that is ostensibly what they ask for.